

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

RONALD P. HARPER, JR.,

    1 Harper Lane
    Stevens, PA 17578

        Plaintiff,

        v.

Franklin & Marshall College (F&M)

    PO Box 3003
    100 Old Main
    Lancaster, PA 17604

John A. Fry, in his official and
individual capacity:

    PO Box 3003
    100 Old Main
    Lancaster, PA 17604

Barley Snyder, LLC (Barley) as
solicitor for Franklin & Marshall
College

    126 East King St
    Lancaster, PA 17602

Lancaster Bureau of Police (LBP)

The Lancaster Bureau of Police
39 W Chestnut St
Lancaster, PA 17603

Officer John Doe

The Lancaster Bureau of Police
39 W Chestnut St
Lancaster, PA 17603

**FILED**

JUN – 2 2010

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

**10    2647**

Case No.

COMPLAINT
(Jury Trial Demanded)

1

Maureen Kelly , in her official and
individual capacity:                    )
)
)
    F&M Security                      )
    600 Race Ave                      )
    Lancaster, PA 17604               )

Edward P. Carroll, in his official and  )
individual capacity:                    )
)
    F&M Security                      )
    600 Race Ave
    Lancaster, PA 17604

Bret Mitchell, in his official and
individual capacity:

    F&M Security
    600 Race Ave
    Lancaster, PA 17604

Mark Enis, in his official and
individual capacity:

    F&M Security
    600 Race Ave
    Lancaster, PA 17604

Paul P. Morin, in his official and
individual capacity:

    F&M Security
    600 Race Ave
    Lancaster, PA 17604

John Doe, in his official and
individual capacity:

    F&M Security
    600 Race Ave
    Lancaster, PA 17604

Keith A. Orris, in his official and
individual capacity:

PO Box 3003
100 Old Main
Lancaster, PA 17604

Nancy Collins, in her official and
individual capacity:

      PO Box 3003
      100 Old Main
      Lancaster, PA 17604

Dulcey Antonucci, in her official and
individual capacity:

      PO Box 3003
      100 Old Main
      Lancaster, PA 17604

'Gardener Doe', in his official and
individual capacity:

      PO Box 3003
      100 Old Main
      Lancaster, PA 17604

'Housekeeper Doe', in her official
and individual capacity:

      PO Box 3003
      100 Old Main
      Lancaster, PA 17604

John Doe, in his official and
individual capacity:

      PO Box 3003
      100 Old Main
      Lancaster, PA 17604

      Defendants.

## VERIFIED COMPLAINT

Plaintiff, Ronald P. Harper Jr, Pro Se, brings this complaint against the above-named defendants, their employees, agents, and successors in office to safeguard his rights under the United States Constitution, and in support thereof, allege the following:

### PRELIMINARY STATEMENT

1.    This is an action under 42 U.S.C. § 1983 and the United States Constitution challenging the deprivation of Plaintiff's rights under the First, Fourth and Fourteenth Amendments.  Because Plaintiff published a uncomplimentary story, Defendants did conspire to punish Plaintiff for exercising his First Amendment rights.   F&M security first stole a newspaper distribution box.   They then assaulted, molested, jailed Plaintiff, and physically stopped Plaintiff from photographing when he attempted to replace the stolen box.  After falsely arresting, F&M then filed false charges and published and spoke libelous comments to other media.  Defendant used those false charges in order to prevent Plaintiff from attending and reporting on a public meeting held at F&M's campus. Next, Defendant created a scenario where Plaintiff could be arrested for attending a public rally.  Again Defendant tried to prevent Plaintiff from photographing.

2.    Plaintiff seeks injunctive relief in order to permanently enjoin Defendants from denying Plaintiff's right to photograph.

4

3.  Plaintiff seeks a declaratory judgment that F&M security may not prevent him from traveling on the public streets without fear of false arrest, assault, imprisonment and false charges.

4.  Plaintiff seeks a declaratory judgment against the contrived 'no trespass' notice that's used to threaten Plaintiff with false arrest and keep him from public events and commercial venues open to the general public.

5.  Plaintiff seeks a declaratory judgment that defendant destroy all records created or maintained on Lancaster Post's customers.

6.  Plaintiff seeks compensatory damages for the continued and ongoing pattern of frustrating his exercise of his constitutional rights.

7.  Plaintiff seeks compensatory damages for his assault, molestation, and unlawful detention for over two and half hours and for the false charges and the resulting maligning of reputation in community.

8.  Plaintiff seeks punitive damages against defendants in their individual capacity for their outrageous pattern of conduct to deny him the right to exercise his constitutional rights.  Plaintiff seeks permanent injunctive relief and other relief as set forth in the prayer for relief.


## JURISDICTION AND VENUE


9.  This court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(1), 1343(a)(3), 1343(a)(4), 42 U.S.C. § 1983, and the First, Fourth and Fourteenth Amendments to the United States Constitution.

10.   Venue for this action properly lies in this Judicial District pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in Lancaster County, Commonwealth of Pennsylvania, and within this Judicial District, and all or substantially all of the events that give rise to the claims in this action occurred in this District.

## PARTIES

11.   Plaintiff Ronald P. Harper, Jr. is an adult individual residing in Stevens, Pennsylvania. Mr. Harper is the owner and publisher of Lancaster Post and other media interests and has a decade-long career of exposing public corruption and other matters of public concern.

12.   Defendant Franklin and Marshall College is a federally registered 501(c)3 with an address PO Box 3003, 100 Old Main, Lancaster, PA 17604 who acquired and utilized "...all the powers of a police officer in this Commonwealth" via Pennsylvania State law, 22 Pa. Cons. Stat. § 501, "Private Police". At all times relevant to this complaint, the college, and their agents and employees were acting under color of state law.

13.   Defendant John A. Fry is the President of the College and is the ultimately "respondeat superior" over the constitutionally sworn officers, as well as, over all other defendants employed by the college. At all times relevant to this complaint, he, and his agents and employees were acting under color of state law. He is being sued in the official and individual capacities.

14. Defendant, LBP, is the police force for the third class city, Lancaster, PA in the County of Lancaster and at all times relevant to this complaint, they and their agents and employees were acting under color of state law.

15. Officer John Doe is employed by the LBP and was at all times relevant to this complaint, acting under color of state law. He is being sued in his official and individual capacities.

16. Defendants Maureen Kelly, Directory of Security, Edward P. Carroll, Bret Mitchell, Mark Enis, PAUL P MORIN and John Doe all work in the Franklin & Marshall security and at all times relevant to this complaint, they, and their agents and employees were acting under color of state law. (John Doe is any unknown F&M security) Additionally, Defendants took an oath to uphold the state and federal constitution, as well as, uphold the laws of the Commonwealth of Pennsylvania. They are being sued in their official and individual capacities.

17. Defendant, Barley Snyder, LLC with a registered address at 126 East King St., Lancaster, PA 17602. At all times relevant to this complaint was acting under color of state law as solicitor for Franklin & Marshall College and as such, helped acquire police powers for the school and then, guided and directed the actions of police and other agents of the school.

18. Defendants, Keith A. Orris, Nancy Collins, Dulcey Antonucci, 'Gardener Doe', 'Housekeeper Doe' and John Doe (Gardner, Housekeeper and John Doe's names are not known at this time) works for defendant Franklin &

7

Marshall and at all times relevant to this complaint, they, and their agents and employees were acting under color of state law. They are being sued in their official and individual capacities.

## FACTUAL ALLEGATIONS

19. Defendants Barley Snyder, LLC and Keith A. Orris oversee and acquire police powers for the college.

20. Plaintiff owns various media interests and, in particular, the Lancaster Post which was a full color, tabloid, published weekly during the events of this suit.   Plaintiff has been a reporter for over a decade and has published stories that uncovered evidence resulting in a school superintendent behind bars, the resignation of a judge, as well as, many other results from his investigative stories.

21. On May 30, 2008, Mr. Harper published a story involving the President of F&M using his influence to get a 'deal' for three students charged with felony burglary in the bar that was below their dormitory.

22. Rather than respond to a reasonable request for comment on the story, Mr. Fry dispatched the head of F&M security to hand deliver a 'no trespass' notice for ALL of F&M property (which includes various restaurants and businesses) to the Lancaster Post's business office. She was accompanied by a uniformed officer. The letter contained libelous, false allegations and outright falsehoods. See exhibit 1.

23.   Defendant Maureen Kelly prepared an ALL POINTS BULLETIN on Plaintiff complete with pictures and directed staff to be on the look out for Plaintiff.

24.   On Monday, June 2, 2008, defendant Ed Carroll removed Plaintiff's red, newspaper distribution box which was in the public right-of-way on the corner of North School Lane and Marietta Ave. located in Lancaster Township which was covered by Defendant Lancaster LBP. The box had the front page of the story prominently displayed in the window of the box. Later it was learned that Mr. Carroll took Plaintiff's property and hid it in F&M's security building. Defendant F&M and LBP conspired as evidence by the letter acknowledging that the stolen box was discussed, in the letter by the Defendant Barley Snyder, LLC. who notified Plaintiff after hours on Thursday, May 5. See exhibit 2.

25.   Plaintiff reported stolen property to Defendant LBP who refused to investigate Defendant F&M despite good suspicions they were involved.

26.   On June 3, 2010, Plaintiff along with his then business partner and co-publisher, Christiaan Hart Nibbrig, parked on North School Lane to replace the stolen newspaper box. This time, the Plaintiff chose the opposite corner because the bus stop had a pole to chain and lock the newspaper distribution box. This corner was originally picked because the Defendant lived in the stately mansion located on the same corner.

27.  Plaintiff set up a video camera to record his every movement while replacing the stolen newspaper box in order to protect himself from any false allegations that might occur.

28.  Defendant 'Gardner Doe' approached Plaintiff and challenged his right to place newspaper distribution box in the public right-of-way. (The right-of-way is 80 feet wide on Marietta Ave.) Defendant 'Gardner Doe' asked how long the box would be there. Plaintiff answered, "As long as I want." Defendant 'Gardner Doe' responded, "We'll see about that," and immediately put a cell phone to his ear.

29.  Defendant Mark Enis sent security there with a 'home invasion' alarm.

30.  Within several minutes, Defendants from the F&M security including several 'John Does' came in various marked vehicles and completely surrounded Plaintiff and Mr. Hart Nibbrig who were standing by their car in the public street. The Plaintiff picked up the camera and recorded the sirens, squealing tires and racing police vehicles. Defendant Carroll immediately charged at the Plaintiff and demanded that he stop recording. Plaintiff refused and when Mr. Carroll asked if Plaintiff trespassed, he answered, 'no'. Despite that, Defendant Morin walked toward Plaintiff and suddenly an unknown number of F&M security pounced on Plaintiff from behind and threw him onto the asphalt. The suddenness of the attack and the weight of the multiple officers meant that the Plaintiff was unable to put his hand out to protect himself. The

resulting abrasions on his scalp, as well as, reinjuring back and neck pain were substantial.

31.  Defendant Mitchell put his knee on the back of Plaintiff's neck and hand-cuffed Plaintiff.  Plaintiff was helped to his feet.  While hand-cuffed and surrounded by various security, Defendant Carroll under the guise of patting down the Plaintiff, fondled his testicles individually.  Plaintiff announced, "If you are going to play with my balls you should at least buy me dinner." Mr. Carroll then did it again. Mr. Mitchell then put him in the back of a cruiser.  Then Co-publisher, Hart Nibbrig, was also hand-cuffed and put into a different cruiser.

32.  At some point, Defendant Fry showed up to supervise the false arrest of the publishers.

33.  Defendant Carroll and Mitchell transported Mr. Harper to police jail cell on F&M's campus (a violation of the Private Police Act).  Plaintiff challenged Mr. Carroll's authority and said that his rights were being violated.  Mr. Carroll laughed aloud and declared, "That's why we have lawyers."

34.  Plaintiff and Mr. Hart Nibbrig's cameras were confiscated.  Mr. Hart Nibbrig's  camera had multiple pictures erased including one that showed security piled on top of Plaintiff.

35.  Mr. Harper was jailed for over 2 ½ hours in the jail cell.

36.  Despite repeated requests, at least a dozen times, Mr. Harper was never allowed to speak to his lawyer or contact anyone about his imprisonment.

37.  Mr. Hart Nibbrig was held for 2 hours and given a 'no trespass notice'.

38.  Mr. Harper was released and was cited for a misdemeanor Defiant Trespass, as well as, Disorderly Conduct.

39.  Defendant Fry was interviewed by WGAL TV about the assault and jailing of the publishers and Fry made false statement, about Plaintiff and claimed that he trespassed.  Fry was then shown the video which demonstrated that no trespassing occurred.  Fry is seen taking notes but said to the reporter, who asked about F&M security, "Do you stand by their actions with regard to Mr. Harper?"  Fry answers, "From what I have seen, what I have read in the police reports, what I have seen, the answer is yes, I absolutely stand behind them."

40.  When Defendants 'Gardner Doe' and 'Housekeeper Doe' found out that a video recording contradicted their testimony made against Plaintiff, they retracted their sworn statements.

41.  Defendant F&M took millions of dollars of taxpayer money for a project that required a public meeting that was held June 19, 2008 on their campus. The Plaintiff and Mr. Hart Nibbrig were under threat of arrest if they attended the public meeting.  The result was that Defendant Fry did not have to answer any questions from the Lancaster Post.

42. At the public meeting, Defendant LBP had several 'John Doe' officers that were scanning the faces of attendees, looking out for the Plaintiff.

43. On June 20, 2008, Defendant Nancy Collins released a letter to the press which included the false allegations of Defendant Dulecy Antonucci. The letter announced that the false charges of defiant trespass and disorderly conduct were being dropped, but that Plaintiff was still banned from campus.

44. Defendant Barley Snyder, LLC (Barley) has used the criminal system three times against the Plaintiff by having their clients use false representations in order to get police to file false charges against Plaintiff. Charges were dismissed all three times. Once, Plaintiff was similarly accused of 'no trespassing' by another of Barley's clients. The police report included the law firm's instructions on charging the Plaintiff despite the facts. The Dauphin County District Attorney not only dismissed the charges, but filed and received an expungement from Plaintiff's record after reviewing the facts. The Plaintiffs' Barley and F&M use of the 'No Trespass Policy' means that there is a several inch thick binder full of 'no trespass' notices.

45. Defendant Kelly orders that John Doe staff photograph members of the public getting Plaintiff's newspapers out of the distribution box on the corner of North School Lane and Marietta Ave. Defendants used their access to PennDot license plate records to then identify Lancaster Post readers.

13

46. Sen. John McCain and Gov. Sarah Palin were coming to a public rally held on F&M's campus on September 9, 2008. Plaintiff contacted Defendant Barley and explained that if access wasn't granted to the rally that court action would be taken. Barley faxed a letter to Plaintiff consenting to his coming to the rally. See exhibit 3

47. When Plaintiff arrived at the rally, Defendant Carroll, in a similar manner as before, charged at the Plaintiff, again demanding that the video camera should be turned off.

48. Plaintiff yelled at Mr. Carroll to stay away and went to the door where Defendant, LBP 'Officer Doe' was standing and presented the Defendant Barley letter that granted permission to be on the campus. Defendant Doe read the letter and despite that, ordered Plaintiff to 'leave' the property.   Many others were gathered in the parking lot watching the event on the jumbo screen TV. However, rather than risk arrest, Plaintiff, left.

49. Defendant F&M's campus is so open that they currently host a Lancaster County Polling Place where members of the public come and vote.

50. Less than 6 weeks after the campaign rally, F&M was hosting two public meetings: the ACLU's annual meeting and a Lancaster County meeting. Plaintiff filed Pro Se in Lancaster County Court of Common Pleas and had a hearing before the Honorable Dennis Reinaker. Defendant Barley, who gave 'permission' for Plaintiff to attend the rally less than 6 weeks

earlier was now arguing in court that Plaintiff should not be allowed on campus.

51.   Defendant Barley in open court admitted that Defendant's aggressive interactions with the Plaintiff and the Plaintiff's stories were motivating them, ""It is the type and nature of Mr. Harper's continued targeting of the College, interactions with the College, that makes the College so concerned about his attendance."

52.   Judge Reinaker, in a very short hearing, issued an order in Plaintiff's favor. His decision was based on Pennsylvania Supreme Court, Commonwealth v Tate (432 A.2d 1382) decision which essentially says that schools that hold public events like F&M are required to allow any to attend. See decision and trial transcript. Exhibit 4

53.   Defendants LBP and 'John Does' conducted an investigation of Plaintiff's assault, false imprisonment and false arrest by F&M security and declined to prosecute for anything. Lancaster County District Attorney Craig Stedman, who was also the subject of the story that initially caused the uproar, was involved in the decision to not prosecute.

54.   Defendants F&M, Mr. Fry, et al through Defendant Barley, have refused to rescind or alter their position despite having a Judge giving a temporary restraining order.

## ALLEGATIONS OF CHILLING EFFECT

55.   Plaintiff has been threatened for engaging in protected First Amendment activities by publishing a newspaper, photographing, attending public events and even traveling on public streets/sidewalks.

56.   Plaintiff wishes to continue to engage in protected First Amendment activities but fears that the LBP and F&M security in the future and in response to his exercise of his protected First Amendment rights, will maintain its policy of threats and intimidation in order to remove his speech from the public fora.

57.   Plaintiff is chilled, frustrated, and deterred in his exercise in First Amendment activities due to the Defendants' pattern of threats.

## ALLEGATIONS OF LAW

58.   All of the acts of the Defendants, its officers, agents, servants, and employees, as alleged herein, were conducted under color and pretense of the statutes, ordinances, regulations, customs, or usages of Lancaster County.

59.   The lack of adequate training of the LBP and F&M security police officers in the areas of First Amendment rights constitutes deliberate indifference to the constitutional rights of Plaintiff, and is the "policy, custom, or practice" of LBP and F&M security for purposes of imposing liability.

60.   According to Pennsylvania state law, the use of 'Private Police' is for "...so appointed for a corporation organized for the prevention of cruelty to children or aged persons,...". It's not to be used as revenge or to silence

people's exercise of free speech. It's not for a private, unaccountable, President to use as jack-booted thugs against citizens.

61. Pennsylvania law provides in 18 Pa. Cons. Stat. § 5301, Official oppression statute that "A person acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity commits a misdemeanor of the second degree if, knowing that his conduct is illegal, he: (1) subjects another to arrest, detention, search, seizure, mistreatment, dispossession, assessment, lien or other infringement of personal or property rights; or (2) denies or impedes another in the exercise or enjoyment of any right, privilege, power or immunity." This describes exactly what defendants did with their power given to them by statute and court order.

62. The CRIMINAL HISTORY RECORD INFORMATION ACT expressively prohibits the collecting of photos like F&M security has done to Lancaster Post customers. Additionally, access to this data base is not to be used for 'private' interests that would otherwise not be available to corporations.

63. Plaintiff has suffered irreparable injury, including chill to his First Amendment rights, and continues to suffer ongoing irreparable injury to his constitutional rights because of the threats from the police based on the exercise of his protected First Amendment rights.

64. Police's unconstitutional policy and acts are in direct contradiction to numerous United States Supreme Court rulings to include the holding of the United States Supreme Court in *Terminillo v. Chicago*, 337 U.S. 1, 4

(1949), wherein the Supreme Court held, "[F]reedom of speech, though not absolute, is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.   There is no room under our Constitution for a more restrictive view." (Citations omitted, emphasis added).

65.   The assault, molestation, unlawful detention and false charges against Plaintiff, was a further attempt to intimidate Mr. Harper and force him to stop reporting and writing about F&M

66.   The unlawful detention of Mr. Harper was an ongoing deprivation of his First Amendments rights.

## FIRST CAUSE OF ACTION
Violation of Right to Free Speech
*42 U.S.C. § 1983; First and Fourteenth Amendments to the U.S. Constitution*

67.   Plaintiff hereby realleges all matters set forth in the preceding paragraphs of this Complaint and incorporates them herein.

68.   Plaintiff's publishing a newspaper is expressive speech.

69.   Defendants' actions of silencing plaintiff, and the use of violence and criminal law, chill, deter, punish and restrict plaintiff from engaging in expressive speech.

70.   Defendants' continued unwillingness to relent on access to public events, meetings and commercial venues is unreasonable and contrary to settled case law which directly addresses the matter.

71. Defendants have no compelling interest that would justify prohibiting Plaintiff from engaging in expressive speech.

72. Defendants' actions thus constitute a violation of Plaintiff's rights under the Free Speech Clause of the First Amendment to the United States Constitution as incorporated and applied to the states through the Fourteenth Amendment.

WHEREFORE, Plaintiff respectfully prays that the Court grant the equitable and legal relief set forth hereinafter in the prayer for relief.

### SECOND CAUSE OF ACTION
**Violation of Right to Peacefully Assemble**
*42 U.S.C. § 1983; First and Fourteenth Amendments to the U.S. Constitution*

63. Plaintiff hereby realleges all matters set forth in the preceding paragraphs of this Complaint and incorporates them herein.

64. Many people assemble at public meetings held on F&M's campus in a peaceful manner.

65. The attendance by plaintiff of the meetings constitutes a peaceable assembly.

66. Defendants' actions chill, deter, and restrict Plaintiff from peacefully assembling.

67. Defendants have no compelling interest in limiting the peaceable assembly of plaintiff.

68. Defendants' actions thus constitute a violation of Plaintiff's right of peaceable assembly under the First Amendment to the United States

Constitution, as incorporated and applied to the states through the Fourteenth Amendment.

WHEREFORE, Plaintiff respectfully prays that the Court grant the equitable and legal relief set forth hereinafter in the prayer for relief.

### THIRD CAUSE OF ACTION
### Violation of Freedom of the Press
*42 U.S.C. § 1983; First and Fourteenth Amendments to the U.S. Constitution*

69.  Plaintiff hereby realleges all matters set forth in the preceding paragraphs of this Complaint and incorporates them herein.

70.  The Constitution specifically selected the press, which includes not only newspapers, books, web pages and magazines, but also humble leaflets, and circulars, *see Lovell v. City of Griffin*, 303 U.S. 444 (1938), to play an important role in the discussion of public affairs.

71.  The press serves, and was designed to serve, as a powerful antidote to any abuses of power by governmental officials and as a constitutionally chosen means for keeping officials elected by the people responsible to all the people whom they were selected to serve.

72.  Suppression of the right of the press to praise or criticize and to clamor and contend for or against change, which is what Mr. Harper sought to do, muzzles one of the very agencies the Framers of our Constitution thoughtfully and deliberately selected to improve our society and keep it free.

73.  The various actions and patterns of abuse of defendants against Mr. Harper including assault and imprisonment infringed on his rights as a member of the press and publisher to gather information to contend for or against change in Lancaster County.

WHEREFORE, Plaintiff respectfully prays that the Court grant the equitable and legal relief set forth hereinafter in the prayer for relief.

## FOURTH CAUSE OF ACTION
### False Imprisonment
*42 U.S.C. § 1983; Fourth and Fourteenth Amendments to the U.S. Constitution*

74. Plaintiff hereby realleges all matters set forth in the preceding paragraphs of this Complaint and incorporates them herein.

75. Defendants falsely detained Mr. Harper and "seized" him within the meaning of the Fourth Amendment.

76. Defendants were well aware of Mr. Harper's association with his newspaper and targeted him.

77. Mr. Harper repeatedly asked to be released.

78. Defendants refused to release plaintiff, but continued in their seizure, holding, and detention of plaintiff and threatened him with prosecution.

79. Defendants acted without any reasonable or probable cause and contrary to the laws of the Commonwealth of Pennsylvania as there was absolutely no cause for detention or assault.

80. Mr. Harper was subjected to great humiliation, pain, and suffering by reason of the false and malicious detention, seizure, holding, and imprisonment of the plaintiff as aforesaid. Defendants further increased damages by distributing libelous letters and interviews with the press ensuring that lies are disseminated even further.

81. By reason of the acts of defendants, plaintiff suffered severe damage to his credit and reputation and was hindered and prevented from gathering facts for publication on various issues of public interest in Lancaster County.

WHEREFORE, Plaintiff respectfully prays that the Court grant the equitable and legal relief set forth hereinafter in the prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment as follows:

A.   That this Court enjoin Defendants from prohibiting Plaintiff from publicly recording acts, by video or otherwise, undertaken by police officers and public officials that occur in traditional or limited public fora of Lancaster, PA

B.   That Defendant Barley, as an officer of the court, discontinue the abuse of process practice and of their using their standing with law enforcement to gain access to Criminal law prosecutions inappropriately

C.   That this Court render a Declaratory Judgment stating that the actions of Defendants in detaining plaintiff for private revenge is invalid and contrary to state law.

D.   That this Court render a Declaratory Judgment stating that the actions of Defendants in collecting data and using government data bases for private interests is invalid under Pennsylvania Law

E.   The this Court render a Declaratory Judgment against defendants by making the Honorable Judge Reinaker's temporary order regarding access to campus permanent.

F.   That this Court award Plaintiff nominal damages;

G.   That this Court award Plaintiff compensatory damages for his unlawful assault, detention, and filing of false charges by police;

H. That this Court award punitive damages to Plaintiff against defendants in their individual capacities;

I. That this Court award Plaintiff costs and expenses of this action, including reasonable attorneys fees, in accordance with 42 U.S.C. § 1988 and other applicable law; and,

J. That this Court grant such other and further relief as the Court deems equitable, just and proper.

## DEMAND FOR JURY TRIAL

In accordance with FRCP 38, Plaintiff hereby demands a trial by jury on all appropriate issues.

Dated:        June 2, 2010                    By:___    _____   ____   _

# VERIFICATION

I, Ronald P. Harper, Jr., a citizen of the United States and a resident of the Commonwealth of Pennsylvania, have read the foregoing Verified Complaint and the factual allegations therein, and declare, under penalty of perjury that the foregoing is true and correct.

Dated: June 2, 2010                   __/s/ Ronald P. Harper, Jr._____
                                              Ronald P. Harper, Jr.