IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD P. HARPER, JR., | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION |
| | : NO. 10-2647 |
| FRANKLIN & MARSHALL COLLEGE, et al., | : |
| Defendants. | : |

**OPINION**

**Slomsky, J.**                                                              March 30, 2011

## I. INTRODUCTION

Before the Court is Defendants Lancaster Bureau of Police and Officer John Doe's Motion to Dismiss (Doc. No. 5). Plaintiff Ronald P. Harper, Jr. commenced this action on June 2, 2010. Plaintiff is acting *pro se*. On September 21, 2010, Defendants filed a Motion to Dismiss. As of this date, Plaintiff has failed to file a response to the Motion to Dismiss. Over six months have passed since Defendants filed their Motion to Dismiss.

Under Local Rule 7.1(c);

> any party opposing the motion shall serve a brief in opposition, together with such answer or other response which may be appropriate, within fourteen (14) days after service of the motion and supporting brief, except that in the case of a motion under Fed. R. Civ. P. 12(b) or 56, the opposing party shall respond within twenty-one (21) days. In the absence of a timely response, the motion may be granted as uncontested except that a summary judgment motion, to which there has been no timely response, will be governed by Fed. R. Civ. P. 56(c).

Local Civil Rule 7.1(c).

Since Plaintiff has failed to file any response in over six months, the Court will grant Defendants' Motion to Dismiss (Doc. No. 5) as uncontested. See McCraken v. Lancaster City Bureau of Police, 2007 U.S. Dist. LEXIS 11471 (E.D. Pa. Feb. 16, 2007); Harron v. Cartwright, 2006 U.S. Dist. LEXIS 9418 (E.D. Pa. Mar. 8, 2006); Longendorfer v. Roth, 2004 U.S. Dist. LEXIS 8709 (E.D. Pa. Apr. 30, 2004); Stevens v. Citigroup, Inc., 2000 U.S. Dist. LEXIS 18201 (E.D. Pa. Dec. 15, 2000); Winfree v. Tokai Fin. Servs., 2000 U.S. Dist. LEXIS 2068 (E.D. Pa. Mar. 1, 2000). Despite the authority of the Court to grant the Motion as uncontested, the Court has nevertheless considered the Motion on the merits. After review, the Court concludes that the Motion to Dismiss has merit and for this additional reason, the Motion to Dismiss will be granted.

## II. STATEMENT OF FACTS

Plaintiff Ronald P. Harper Jr. has been a reporter for over a decade and is the owner and publisher of the Lancaster Post, a full color tabloid published weekly. (Doc. No. 1 ¶ 20.) Plaintiff has filed suit against numerous Defendants, all of whom are associated with Franklin and Marshall College ("F&M").[1] The Court, however, is only addressing in this Opinion the Motion to Dismiss filed by Defendants Lancaster Bureau of Police ("LBP") and Officer John Doe ("Officer Doe"). LBP is the police force for Lancaster, Pennsylvania, and Officer Doe is an unidentified officer of that police force. (Id. ¶¶ 14-15.)

On May 30, 2008, Plaintiff published a story about the President of F&M, John Fry, and

---

[1] Plaintiff has also brought suit against: Franklin and Marshall College ("F&M"), the President of F&M (John A. Fry), the Director of Security for F&M (Maureen Kelly) and additional F&M security employees, the solicitor for F&M (Barley Snyder, LLC), and other named individuals alleged to work for F&M. (Doc. No. 1 ¶¶ 12-18.)

his alleged involvement in obtaining a "deal" for three students charged with felony burglary. (Id. ¶ 21.) According to Plaintiff, Defendant Fry refused to comment on the story. (Id. ¶ 22.) Instead, he ordered the head of F&M security to hand deliver a "no trespass" notice to the Lancaster Post's business office. (Id.) The "no trespass" notice applied to all F&M property. (Id.) On Monday, June 2, 2008, Defendant Ed Carroll, an employee of F&M security, removed Plaintiff's newspaper distribution box. (Id. ¶ 24.) The distribution box was located in a public right-of-way on the corner of North School Lane and Marietta Avenue in Lancaster Township and was therefore within the jurisdiction of Defendant LBP. (Id.) Prominently displayed in the window of the distribution box was the front page of the newspaper article about Defendant Fry. (Id.) Plaintiff reported to Defendant LBP the newspaper distribution box as stolen property. However, Defendant LBP refused to investigate the incident. (Id. ¶ 25.)

On June 3, 2008, Plaintiff returned to North School Lane to replace the newspaper distribution box with his then business partner and co-publisher, Christiaan Hart Nibbrig. (Id. ¶ 26.) Plaintiff also set up a video camera to record himself replacing the distribution box "in order to protect himself from any false allegations that might occur." (Id. ¶ 27.) According to Plaintiff, he was approached and challenged by Defendant "Gardner Doe," who subsequently called F&M security. (Id. ¶ 28.) Within minutes, Plaintiff and his partner were "completely surrounded" by Defendants from F&M security and by various marked vehicles. (Id. ¶ 30.) Plaintiff maintains that he and his partner were standing at their vehicle in the public street at this time. (Id.) Plaintiff began recording the "sirens, squealing tires and racing police vehicles," at which time Defendant Carroll "charged at the Plaintiff and demanded that he stop recording." (Id.) Plaintiff refused to do so and denied that he had trespassed on F&M property. (Id.)

Subsequently, an unknown number of F&M security personnel "pounced on Plaintiff from behind and threw him onto the asphalt," resulting in abrasions to his scalp, as well as neck and back injuries. (Id. ¶ 30.) Plaintiff alleges that he was handcuffed and inappropriately touched by Defendant Carroll and then placed in the back of a police cruiser. (Id. ¶ 31.) Plaintiff was transported to a police jail cell on F&M's campus and held for over two and a half hours. (Id. ¶¶ 33, 35.) During this time, Plaintiff's camera was confiscated and multiple pictures were allegedly erased. (Id. ¶ 34.) Plaintiff further claims that, despite repeated requests, he was not permitted to contact an attorney or any other person about his confinement. (Id. ¶ 36.) Plaintiff was subsequently released and charged with Defiant Trespass and Disorderly Conduct. (Id. ¶ 38.) Defendant LBP conducted an investigation of Plaintiff's alleged assault, false imprisonment and false arrest by F&M security, and subsequently declined to prosecute anyone involved in the incident. (Id. ¶ 53.)

On June 19, 2008, a public meeting was held on F&M's campus relating to a project funded by taxpayer money. (Id. ¶ 41.) Plaintiff claims that he and his partner were under threat of arrest if they attended the meeting, and that Defendant LBP had several officers scanning the audience looking for Plaintiff. (Id. ¶¶ 41-42.) On June 20, 2008, a letter to the press was released by F&M announcing that the charges against Plaintiff would be dropped, however, Plaintiff was still banned from campus. (Id. ¶ 43.)

On September 9, 2008, a public rally was scheduled to be held on F&M's campus, featuring Senator John McCain and Governor Sarah Palin. (Id. ¶ 46.) Prior to the rally, Plaintiff contacted Defendant Barley Snyder, LLC, a law firm that acts as solicitor for F&M, and threatened court action if Plaintiff was not permitted to attend the rally. (Id.) Defendant Barley

Snyder subsequently faxed a letter to Plaintiff consenting to his attendance at the rally. (Id.) Immediately upon Plaintiff's arrival at the rally, Defendant Carroll allegedly "charged at the Plaintiff, again demanding that the video camera should be turned off." (Id. ¶ 47.) Plaintiff approached Defendant Officer Doe, who was standing at the door, and showed Officer Doe the letter from Defendant Barley Snyder. (Id. ¶ 48.) Officer Doe read the letter and then ordered Plaintiff to "leave" the property. (Id.) Plaintiff chose to leave the property rather than to risk arrest. (Id.)

In the six weeks following the campaign rally, F&M planned to host two public meetings: the ACLU's annual meeting and a Lancaster County meeting. (Id. ¶ 50.) Prior to these meetings, Plaintiff pursued an action in the Lancaster County Court of Common Pleas requesting a temporary restraining order against F&M. (Id.) During the hearing, Defendant Barley Snyder apparently stated that "[i]t is the type and nature of Mr. Harper's continued targeting of the College, interactions with the College, that makes the College so concerned about his attendance." (Id. ¶ 51.) Judge Dennis Reinaker of the Court of Common Pleas of Lancaster County ruled in Plaintiff's favor and granted the temporary restraining order based on Commonwealth v. Tate, 432 A.2d 1382 (Pa. 1981). (Id. ¶ 52.)

On June 6, 2010, Plaintiff filed the Complaint in this Court, alleging numerous violations of 42 U.S.C. § 1983 under the First, Fourth, and Fourteenth Amendments to the United States Constitution. Plaintiff claims that Defendants have violated his rights to free speech, peaceful assembly, and freedom of the press. (Id. ¶¶ 67-73.) Plaintiff also claims that he was falsely imprisoned in violation of the Fourth Amendment. (Id. ¶¶ 74-81.) On September 21, 2010, Defendants LBP and Officer Doe filed a Motion to Dismiss the Complaint for Failure to State a

Claim Upon Which Relief May Be Granted.  As noted, no response has been filed by Plaintiff.

**III.    LEGAL STANDARD**

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) has been the subject of recent examination, culminating with the Supreme Court's Opinion in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).  After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 1949; see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., No. 10-1294, 2010 WL 5071779 (3d Cir. Dec. 14, 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss.  2010 WL 5071779, at *4; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (applying the principles of Iqbal and articulating the 12(b)(6) analysis as a two-part test).

"First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'"  Santiago v. Warminster Twp., 2010 WL 5071779, at *4 (quoting Iqbal, 129 S. Ct. at 1947-50).  A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  Fowler, 578 F.3d at 210-11 (citing Phillips v. County of Allegheny 515 F.3d 224, 234-35 (3d Cir. 2008)).  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

the complaint has alleged–but it has not 'shown'– 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV. DISCUSSION

Defendants Lancaster Bureau of Police and Office John Doe contend that the Complaint should be dismissed as to them because a Bureau of Police is not a proper Defendant in a Section 1983 action, and further because no constitutionally protected conduct was violated when Plaintiff was asked to leave the college campus. The Court agrees.

### A. Defendant LBP Is Not A Proper Defendant

Defendants argue that the police department is not a proper defendant in this Section 1983 action. In general, a police department is not a "person" for purposes of a Section 1983 action and therefore cannot be sued under Section 1983. Shilling v. Brush, 2005 WL 2100707, at *3 (M.D. Pa. Aug. 26, 2005) A police department is a sub-unit of the city government and is merely a vehicle through which the city fulfills its policing functions, and are therefore not suable entities in Section 1983 actions. Id. (citing Stokes v. The Chester County Sheriff's Dept, 1994 U.S. Dist. LEXIS 16895 (E.D. Pa. 1994)). Courts in the Third Circuit have addressed this issue and held that "a police department is not amenable to suit under Section 1983." Golya v. Golya, et al., 2007 WL 2301085, at *9 (M.D. Pa. Aug. 9, 2007) (Vanaskie, J.).

Here, the Complaint names the Lancaster Bureau of Police as a Defendant in this Section 1983 action. Defendant LBP is not a "person" for purposes of a Section 1983 action, but rather, it is solely a sub-unit of the city government. Therefore, as a mere vehicle through which the city fulfills its policing functions, Defendant LBP cannot be sued. See Shilling, 2005 WL 2100707,

at *3.  Consequently, Defendants' Motion will be granted and the action against Defendant LBP will be dismissed.

> B. <u>Defendant Officer Doe Did Not Violate Any Constitutionally Protected Activity</u>

Defendants contend that Plaintiff failed to plead a Section 1983 claim against Defendant Officer Doe because no constitutionally protected conduct is alleged.  To succeed on a Section 1983 claim, Plaintiff must show a violation of a right secured by the United States Constitution, and that the violation was committed by a defendant acting under the color of state law.  <u>See</u> 42 U.S.C. § 1983.  The First Amendment does not prevent an individual from restricting the exercise of free speech on private property.  <u>Radich v. Goode</u>, 886 F.2d 1391, 1398 (3d Cir. 1989) (citing <u>Hudgens v. NLRB</u>, 424 U.S. 507 (1976)).  Further, "private property does not 'lose its private character merely because the public is generally invited to use it for designated purposes.'"  <u>Radich</u>, 886 F.2d at 1398 (quoting <u>Lloyd Corp. v. Tanner</u>, 407 U.S. 551, 569 (1972)).  Moreover, "[p]olice action to protect private property rights does not thereby subject that private property to first amendment constraints."  <u>Radich</u>, 886 F.2d at 1398.

Here, Plaintiff asserts that his First Amendment right was violated by Defendant Officer Doe at a public rally on the campus of F&M.  Plaintiff was banned from the campus, but he obtained a letter of consent issued by a law firm to attend the instant rally.  The Complaint states that Plaintiff approached Defendant Officer Doe and presented him with the consent letter, but Defendant Officer Doe nevertheless told Plaintiff to leave.  Plaintiff subsequently left, rather than risk arrest.  Importantly, F&M is a privately owned campus.  As a private property owner, the First Amendment does not prevent F&M from restricting access to its property for a public event because the college does not lose its private character merely because the public is invited for a

rally. See Radich, 886 F.2d at 1398. More importantly here, police action by Defendant Officer Doe responding to orders of a private landowner to protect private property rights does not create a First Amendment right of access violation. See id. The only allegation against Defendant Officer Doe in the Complaint is that he told Plaintiff to leave a rally.

Therefore, the Complaint fails to allege a violation of a constitutional right by Defendant Officer Doe, and accordingly Plaintiffs Section 1983 claim against him fails to state a claim on which relief may be granted. Defendant Officer Doe's Motion to Dismiss will be granted.

## V. CONCLUSION

For the foregoing reasons, Defendants Lancaster Bureau of Police and Officer John Doe's Motion to Dismiss (Doc. No. 5) will be granted, and these Defendants will be dismissed as defendants in this case.

An appropriate Order follows.