IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD P. HARPER, JR., | : |
| | : |
| Plaintiff, | : |
| | : CIVIL ACTION |
| v. | : |
| | : NO. 10-2647 |
| FRANKLIN & MARSHALL COLLEGE, et al., | : |
| | : |
| Defendants. | : |

## OPINION

**Slomsky, J.**                                                                                  **July 13, 2011**

## I.    INTRODUCTION

Before the Court are three Motions to Dismiss filed by (1) Franklin and Marshall College security personnel[1] ("F&M Security Defendants") (Doc. No. 9), (2) Franklin and Marshall College and other non-security employees[2] ("F&M Employee Defendants") (Doc. No. 8), and (3) Barley Snyder LLC[3] (Doc. No. 13).

Plaintiff Ronald P. Harper, Jr. commenced this action on June 2, 2010, alleging violations of his First, Fourth, and Fourteenth Amendment rights under 42 U.S.C. § 1983. Plaintiff is acting *pro se*. On October 22, 2010, F&M Employee Defendants and F&M Security Defendants

---

[1] Defendants included in this Motion are Maureen Kelly, the Director of Security for F&M, and Edward Carroll, Bret Mitchell, Mark Ennis, and Paul Morin, F&M security employees. (Doc. No. 1 ¶ 16.)

[2] Defendants included in this Motion are John A. Fry, the President of F&M, and Keith Orris, Nancy Collins, Dulcey Antonucci, "Gardener Doe," and "Housekeeper Doe," individuals alleged to work for F&M. (Doc. No. 1 ¶¶ 13, 18.)

[3] Barley Snyder LLC is a law firm and the solicitor for F&M. (Doc. No. 1 ¶ 17.)

each filed a Motion to Dismiss (Doc. Nos. 8, 9).  On November 29, 2010, Defendant Barley Snyder LLC filed a Motion to Dismiss (Doc. No. 13).  As of this date, Plaintiff has not filed a response to any of the Motions to Dismiss.  Over six months have passed since Defendants filed their Motions to Dismiss.

>Under Local Rule 7.1(c) of the Eastern District of Pennsylvania:

>>. . . any party opposing the motion shall serve a brief in opposition, together with such answer or other response which may be appropriate, within fourteen (14) days after service of the motion and supporting brief, except that in the case of a motion under Fed. R. Civ. P. 12(b) or 56, the opposing party shall respond within twenty-one (21) days.  In the absence of a timely response, the motion may be granted as uncontested except that a summary judgment motion, to which there has been no timely response, will be governed by Fed. R. Civ. P. 56(c). . . .

Local Civil Rule 7.1(c).

Since Plaintiff has not filed a response in over six months, the Court will grant Defendants' Motions to Dismiss (Doc. Nos. 8, 9, 13) as uncontested.  See McCraken v. Lancaster City Bureau of Police, 2007 U.S. Dist. LEXIS 11471 (E.D. Pa.  Feb. 16, 2007); Harron v. Cartwright, 2006 U.S. Dist. LEXIS 9418 (E.D. Pa. Mar. 8, 2006); Longendorfer v. Roth, 2004 U.S. Dist. LEXIS 8709 (E.D. Pa. Apr. 30, 2004); Stevens v. Citigroup, Inc., 2000 U.S. Dist. LEXIS 18201 (E.D. Pa. Dec. 15, 2000); Winfree v. Tokai Fin. Servs., 2000 U.S. Dist. LEXIS 2068 (E.D. Pa. Mar. 1, 2000).  Despite the authority of this Court to grant the Motions as uncontested, the Court has nevertheless considered the Motions on the merits.  After considerable review, the Court concludes that the Motions to Dismiss have merit and for this additional reason, the Motions to Dismiss will be granted.

II.     STATEMENT OF FACTS

Plaintiff Ronald P. Harper Jr. has been a reporter for over a decade and is the owner and publisher of the Lancaster Post, a full color tabloid published weekly. (Doc. No. 1 ¶ 20.) In this case, he has filed suit against numerous Defendants associated with Franklin and Marshall College and the Lancaster Bureau of Police ("LBP").[4] In this Opinion, the Court will address the Motions to Dismiss filed by F&M Employee Defendants, F&M Security Defendants, and Defendant Barley Snyder, LLC.

On May 30, 2008, Plaintiff published a story about the President of F&M, John Fry, and his alleged involvement in obtaining a "deal" for three students charged with felony burglary. (Id. ¶ 21.) According to Plaintiff, Defendant Fry refused to comment on the story. (Id. ¶ 22.) Instead, he ordered the head of F&M security to hand-deliver a "no trespass" notice to the Lancaster Post's business office. (Id.) The "no trespass" notice applied to all F&M property. (Id.)

On Monday, June 2, 2008, Defendant Edward Carroll, an employee of F&M security, removed Plaintiff's newspaper distribution box. (Id. ¶ 24.) The distribution box was located in a public right-of-way on the corner of North School Lane and Marietta Avenue in Lancaster Township and was within the jurisdiction of the LBP. (Id.) Prominently displayed in the window of the distribution box was the front page newspaper article about Defendant Fry. (Id.) Plaintiff reported to the LBP that the newspaper distribution box was stolen. However, the LBP refused to investigate the incident. (Id. ¶ 25.)

---

[4] The Lancaster Bureau of Police and individual police officers were also named as defendants in this case. The Court dismissed the action against these defendants in an Opinion dated March 30, 2011. (Doc. No. 15.)

On June 3, 2008, Plaintiff returned to North School Lane with his then business partner and co-publisher, Christiaan Hart Nibbrig, to replace the newspaper distribution box. (Id. ¶ 26.) Plaintiff also set up a video camera to record himself replacing the box "in order to protect himself from any false allegations that might occur." (Id. ¶ 27.) According to Plaintiff, he was approached and challenged by Defendant "Gardener Doe," who subsequently called F&M security. (Id. ¶ 28.) Within minutes, Plaintiff and his partner were "completely surrounded" by F&M Security Defendants and by various marked vehicles. (Id. ¶ 30.) Plaintiff maintains that at this time he and his partner were standing at their vehicle in the public street. (Id.) Plaintiff began recording the "sirens, squealing tires and racing police vehicles," at which time Defendant Carroll "charged at the Plaintiff and demanded that he stop recording." (Id.) Plaintiff refused to do so while denying that he had trespassed on F&M property. (Id.)

Subsequently, an unknown number of F&M security personnel "pounced on Plaintiff from behind and threw him onto the asphalt," resulting in abrasions to his scalp, and neck and back injuries. (Id. ¶ 30.) Plaintiff alleges that he was handcuffed and inappropriately touched by Defendant Carroll and then placed in the back of a police cruiser. (Id. ¶ 31.) Plaintiff was transported to a police jail cell located on the F&M campus and held for over two and a half hours. (Id. ¶¶ 33, 35.) During this time, Plaintiff's camera was confiscated and multiple pictures were allegedly erased. (Id. ¶ 34.) Plaintiff further claims that, despite repeated requests, he was not permitted to contact an attorney or any other person about his confinement. (Id. ¶ 36.) Plaintiff was subsequently released and charged with Defiant Trespass and Disorderly Conduct. (Id. ¶ 38.) The LBP conducted an investigation of the alleged assault, false imprisonment and false arrest by F&M security, and subsequently declined to prosecute anyone involved in the

incident.  (Id. ¶ 53.)

On June 19, 2008, a public meeting was held on F&M's campus relating to a project funded by taxpayer money.  (Id. ¶ 41.)  Plaintiff claims that he and his partner were under threat of arrest if they attended the meeting, and that the LBP had several officers scanning the audience looking for Plaintiff.  (Id. ¶¶ 41-42.)  On June 20, 2008, a letter to the press was released by F&M announcing that the charges of Defiant Trespass and Disorderly Conduct that had been filed against Plaintiff would be dropped.  Plaintiff, however, was still banned from campus.  (Id. ¶ 43.)

On September 9, 2008, a public rally was to be held on F&M's campus, featuring Senator John McCain and Governor Sarah Palin.  (Id. ¶ 46.)  Prior to the rally, Plaintiff contacted Defendant Barley Snyder LLC, a law firm that acts as solicitor for F&M, and threatened court action if Plaintiff was not permitted to attend the rally.  (Id.)  Defendant Barley Snyder subsequently faxed a letter to Plaintiff consenting to his attendance at the rally.  (Id.)  Plaintiff arrived at the rally and Defendant Carroll allegedly "charged at the Plaintiff, again demanding that the video camera should be turned off."  (Id. ¶ 47.)  Plaintiff approached LBP Officer Doe, who was standing at the door, and showed Officer Doe the letter from Defendant Barley Snyder.  (Id. ¶ 48.)  Officer Doe read the letter and then ordered Plaintiff to "leave" the property.  (Id.)  Plaintiff chose to leave the property rather than to risk arrest.  (Id.)

In the six weeks following the campaign rally, F&M planned to host two public meetings: the ACLU's annual meeting and a Lancaster County meeting.  (Id. ¶ 50.)  Prior to these meetings, Plaintiff pursued an action in the Lancaster County Court of Common Pleas requesting a temporary restraining order against F&M and permission to attend the meetings.  (Id.)  During

the hearing, Defendant Barley Snyder through counsel apparently stated that "[i]t is the type and nature of Mr. Harper's continued targeting of the College, interactions with the College, that makes the College so concerned about his attendance." (Id. ¶ 51.)  Judge Dennis Reinaker of the Court of Common Pleas of Lancaster County ruled in Plaintiff's favor and granted the temporary restraining order based on Commonwealth v. Tate, 432 A.2d 1382 (Pa. 1981).  (Id. ¶ 52.)

On June 6, 2010, Plaintiff filed the Complaint in this Court, alleging numerous violations of 42 U.S.C. § 1983 under the First, Fourth, and Fourteenth Amendments to the United States Constitution.  Plaintiff claims that Defendants have violated his rights to free speech, peaceful assembly, and freedom of the press.  (Id. ¶¶ 67-73.)  Plaintiff also claims that he was falsely imprisoned in violation of the Fourth Amendment.  (Id. ¶¶ 74-81.)  As noted above, on October 22, 2010, F&M Defendants and F&M Security Defendants each filed a Motion to Dismiss (Doc. Nos. 8, 9), and on November 29, 2010, Defendant Barley Snyder filed a Motion to Dismiss the Complaint (Doc. No. 13).  As previously noted, no response has been filed by Plaintiff to the Motions to Dismiss.

**III.   LEGAL STANDARD**

The motion to dismiss standard under Federal Rule of Civil Procedure "12(b)(6) has been the subject of recent examination, culminating with the Supreme Court's Opinion in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).  After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 1949; see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., No. 10-1294, 2010 WL 5071779 (3d Cir. Dec. 14, 2010), set forth a three-part

analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss. 2010 WL 5071779, at *4; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (applying the principles of Iqbal and articulating the 12(b)(6) analysis as a two-part test).

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago, 2010 WL 5071779, at *4 (quoting Iqbal, 129 S. Ct. at 1947-50). "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, No. 10-3539, 2011 WL 2044166, at *2 (3d Cir. May 26, 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler, 578 F.3d at 210-11 (citing Phillips v. County of Allegheny 515 F.3d 224, 234-35 (3d Cir. 2008)). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'– 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV.     DISCUSSION

Defendants contend that the Complaint should be dismissed because it fails to allege "state action" necessary to establish a claim under 42 U.S.C. § 1983.  The Court agrees.  To establish a prima facie case under Section 1983, a plaintiff must demonstrate 1) that a person acting under the color of state law 2) deprived him of a federal right.  Growman v. Township of Manalpan, 47 F.3d 628, 633 (3d Cir. 1995).  "The test for determining whether someone is acting under 'color of law' is virtually identical to evaluating whether there is state action." Francis v. Lehigh University, No. 10-4300, 2011 WL 204749, *3 (E.D. Pa. Jan. 24, 2011) (citing Leshko v. Servis, 423 F.3d 337, 339 (3d Cir. 2005)).  Therefore, in order to state a claim under Section 1983, a plaintiff "must allege that he was deprived of a federal constitutional or statutory right by a state actor." Francis, 2011 WL 204749, at *3.

In this respect, the "color of state law" element means that "merely private conduct, no matter how discriminatory or wrongful, does not violate Section 1983." Id. at *4 (citing Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40 (1999)).  When the relevant actors are private individuals or associations, the Court must still assess whether their actions were nevertheless "under color of state law," which is a fact-specific inquiry.  Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995).  Conduct by a private actor satisfies the "color of state law" requirement if the deprivation of a federal right is "fairly attributable to the state." Francis, 2011 WL 204749, at *4 (citing Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)).  The notable requirement regarding state action is that a defendant in a Section 1983 action "exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Groman, 47 F.3d at 638 (quoting West v. Adkins, 487 U.S. 42, 49

(1988)). "A private action is not converted into one under color of state law merely by some tenuous connection to state action." Id.

Here, Plaintiff has failed to establish the threshold requirement that Defendants were acting under color of state law. With regard to F&M Employee Defendants, F&M is a private college, and while it does serve a public function, courts have widely rejected the suggestion that a private university or college acts under color of state law merely by providing higher education. Francis, 2011 WL 204749, at *5. Moreover, there are insufficient facts to support a claim that F&M Security Defendants are state actors. Plaintiff does allege that F&M Security Defendants were appointed as Private Police under the Pennsylvania Private Police Act. However, this allegation does not clothe campus police officers with the authority of the state. Hargrove v. City of Philadelphia, No. 93-5760, 1995 WL 584490, at *2 (E.D. Pa. Oct. 3, 1995). In addition, Defendant Barley Snyder LLC is a private law firm which provides legal services to F&M. As a private law firm, Defendant Barley Snyder LLC did not act under color of state law within the meaning of Section 1983. Ojserkis v. Aprile, 245 F. App'x 217 (3d Cir. 2007).

In the Complaint, Plaintiff also alleges a conspiracy to violate his civil rights between these private Defendants and the LBP. "Although not an agent of the state, a private party who willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right acts 'under color of state law' for purposes of Section 1983." Abbott v. Latshaw, 164 F.3d 141, 147-48 (3d Cir. 1998) (citing Dennis v. Sparks, 449 U.S. 24 (1980)).

In the instant case, however, the Complaint lacks factual assertions to plausibly establish a willful, joint conspiracy between any of the private Defendants and the LBP. Instead, the

Complaint contains only a conclusory allegation of the existence of a conspiracy coupled with other allegations of police presence on campus. For example, Plaintiff alleges that at a June 19, 2008 public meeting on campus, the LBP had officers scanning the audience looking for him. Private Defendants, however, are not acting under color of state law merely by furnishing the police with information about a possible public disturbance. Cvetko v. Derry Township Police Department, No. 09-1260, 2010 WL 1791140, at *4 (M.D. Pa. May 4, 2010).

Consequently, Plaintiff has not plausibly shown that F&M Employee Defendants, F&M Security Defendants, or Defendant Barley Snyder LLC were state actors in order to establish a claim under Section 1983. The Complaint does contain various allegations that Plaintiff was assaulted, confined, and wronged. While such conduct as alleged is not to be condoned, the Court notes again that conduct by private actors, no matter how discriminatory or wrongful, is not a violation under Section 1983. Francis, 2011 WL 204749, at *4 (citing Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40 (1999)).

## V. CONCLUSION

For the foregoing reasons, F&M Employee Defendants' Motion to Dismiss (Doc. No. 8), F&M Security Defendants' Motion to Dismiss (Doc. No. 9), and Defendant Barley Snyder LLC's Motion to Dismiss (Doc. No. 13) will be granted, and the case will be dismissed.

An appropriate Order follows.